RED STAR MOTOR DRIVERS' ASS'N v. CITY OF DETROIT.

1. DISMISSAL AND NONSUIT—MOTION TO DISMISS.
  Res judicata may not be urged on motion to dismiss.

2. INJUNCTION—QUESTION BEFORE COURT—EQUITY.
  On a motion to dismiss a bill to enjoin the enforcement of an ordinance of the city of Detroit, relating to jitneys, the question before the court is whether there is any equity in the bill, whether, assuming all the facts properly pleaded in the bill to be true, the ordinance is an invalid, unenforceable, unworkable piece of municipal legislation, justifying and requiring the court by its injunction to inhibit its enforcement.

3. DISMISSAL AND NONSUIT—MOTION TO DISMISS.
  On motion to dismiss, the allegations of the bill must be accepted as true.

As to validity of ordinance regulating jitney busses as to routes, etc., see annotation in L. R. A. 1915 F, 840; L. R. A. 1916 B, 1159; L. R. A. 1918 B, 909; L. R. A. 1918 F, 475.

4. MUNICIPAL CORPORATIONS—ORDINANCE—PUBLISHING ''IMMEDI-
ATELY.''

An ordinance of the city of Detroit approved May 29, 1922, and
published on June 3, 5, and 6 (May 30 being Decoration Day
and June 4 being Sunday) was published ''immediately''
after approval, in accordance with the provision of the charter;
''immediately'' being synonymous with the words ''without
delay.''

5. SAME—PUBLISHING IN NEWSPAPER.

Publication of an ordinance of the city of Detroit in the Detroit
Legal News, a daily newspaper printed in the English language
in said city, and printing news of the courts, legal notices, and
proceedings, was a compliance with the city charter.

6. SAME—ORDINANCES—STATUTES—RECORDING AND AUTHENTICATING
ORDINANCES.

A provision in 1 Comp. Laws 1915, § 3002, requiring the city
clerk to record and authenticate city ordinances, relates to
cities of the fourth class, and if a similar provision is appli-
cable to the city of Detroit, it is directory.

7. SAME—ORDINANCE VALIDLY PROMULGATED.

An ordinance of the city of Detroit relating to jitneys, *held,*
validly promulgated.

8. SAME—ORDINANCE NOT OBJECTIONABLE AS VESTING ARBITRARY
POWER IN MAYOR.

An objection to the validity of an ordinance of the city of
Detroit, relating to jitneys, on the ground that sections 3 and
5 vest arbitrary authority in the mayor to grant or refuse to
grant and to revoke licenses to jitney owners and jitney drivers,
*held,* not tenable, since its requirements set up certain stand-
ards which must be met.

9. SAME—PUBLIC UTILITIES COMMISSION HAVE NO JURISDICTION
OVER JITNEYS LICENSED BY CITY.

An ordinance of the city of Detroit relating to the operation of
jitneys on the city streets is not objectionable because in con-
flict with Act No. 209, Pub. Acts 1923, in that it deprives the
Michigan public utilities commission of jurisdiction over these
common carriers, since said act is not applicable.

10. SAME—CONSTITUTIONAL LAW—CITY HAS CONTROL OVER ITS
STREETS.

The constitutional right of a city to the reasonable control of
its streets may not be taken away by courts, individuals, ad-
ministrative bodies, or by the legislature itself.

11. SAME—ORDINANCE NOT DISCRIMINATORY AGAINST RESIDENTS.

An objection that an ordinance of the city of Detroit relating to the operation of jitneys on the city streets is invalid as discriminatory because section 14 permits the police department to allow outside jitneys to use prohibited streets while withdrawing them from resident owners and drivers, is untenable, since section 4 prohibits all jitneys from using the excepted streets.

12. SAME—QUESTION OF DISCRIMINATION AGAINST NONRESIDENTS NOT BEFORE COURT.

The validity of a provision in an ordinance of the city of Detroit relating to jitneys, limiting the granting of licenses to residents of Detroit, is not determined, where no nonresident presenting himself as an applicant for a license is before the court.

13. SAME—VALIDITY OF PROVISION FOR BOND NOT BEFORE COURT.

The validity of a provision in said ordinance requiring that a bond be furnished as indemnity from damages done while operating a jitney either within or without the city limits is not determined, where no driver or owner is before the court seeking a license without bond or with bond.

14. SAME—WORKABLE ORDINANCE VALID ALTHOUGH SOME PROVISIONS OBJECTIONABLE.

Where objections to said ordinance could be sustained and still leave a workable ordinance, the court will not declare it invalid.

15. EQUITY—AMENDING BILL SUBJECT TO DISCRETION OF COURT—NOT MATTER OF RIGHT.

Under 3 Comp. Laws 1915, § 13753, plaintiffs are not entitled, as matter of right, to file an amended bill if it be found that the bill before the court does not state a case for equitable relief, but the Supreme Court, in its discretion, and when justice requires, on granting a motion to dismiss, may remand the case to the circuit court with leave to there apply for permission to file an amended bill.

16. SAME—JUSTICE DOES NOT REQUIRE COURT TO GRANT MOTION TO AMEND BILL.

Where the city of Detroit, for over six years, has been restrained from enforcing a valid ordinance relating to the operation of jitneys on its streets, justice does not require the Supreme Court, on granting a motion to dismiss a bill to restrain its

enforcement which is the second amended bill, to remand the case to the circuit court with leave to there apply for permission to again amend the bill.

NORTH and WIEST, JJ., dissenting.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 13, 1928. (Docket No. 128, Calendar No. 33,657.) Decided October 24, 1928.

Bill by the Red Star Motor Drivers' Association and others against the city of Detroit and others to enjoin the enforcement of an ordinance. From an order denying a motion to dismiss, defendants appeal. Reversed, and bill dismissed.

*Edward N. Barnard,* for plaintiffs.

*Clarence E. Wilcox* and *Clarence E. Page,* for defendants.

WIEST, J. (*dissenting*). The two plaintiff associations, and several individuals, filed the bill herein against the city of Detroit and other defendants, to enjoin enforcement of a municipal ordinance, barring jitneys, serving the public, from operating upon certain streets, and regulating their employment upon others. A temporary injunction, restraining enforcement of the ordinance, was granted. The defendant city moved to dismiss the bill and to dissolve the injunction. Both motions were denied. We granted the city leave to appeal from the order denying the motion to dismiss the bill, and that subject is now before us. The record contains much matter extraneous to the limited issue presented by the motion and we lay all such aside.

The sole legitimate function of the motion to dismiss is to present the question of whether the bill

of complaint, accepting as true every averment well pleaded therein, states a case in equity. Upon such question we may not consider the urged rule of *res adjudicata,* for the reasons set up in support thereof are *dehors* the allegations in the bill, and, therefore, can only be presented by plea in bar. *Vyse* v. *Richards,* 208 Mich. 383. We have no plea in bar before us. The answer, perhaps, contains averments in the nature of a plea in bar, but, upon the subject of the sufficiency of the bill of complaint, as a pleading, we cannot look to the answer and consider its allegations of former adjudication. If points of law, presented by allegations in the bill, have been decided by this court, we will make application thereof under the doctrine of *stare decisis,* being careful, however, to not confuse therewith the excluded rule of *res adjudicata.* Decisions, in order to justify their employment as precedents, must relate to points involved in cited cases and thus necessarily decided; for all else is but *obiter dicta* and no sanction for saying, "this point has been decided."

In 7 R. C. L., p. 1003, it is stated:

"The mandate of the doctrine of *stare decisis* being, * * * to let that which has been decided stand undisturbed, it is important to ascertain just when a matter has been decided, so that under the doctrine now being considered, it no longer remains an open question. * * * The doctrine of *stare decisis* contemplates only such points as are actually involved and determined in a case, and not what is said by the court or judge outside of the record or on points not necessarily involved therein."

In *First National Bank* v. *Union Trust Co.,* 158 Mich. 94, 99 (133 Am. St. Rep. 362), this court said:

"There is no rule better settled than that which holds that no case is to be considered authority except upon the questions actually decided."

Counsel for the city cite *Red Star Motor Drivers' Ass'n* v. *City of Detroit,* 234 Mich. 398, as decisive of this case. What that case settled in point of law is available to defendant city in this case, under the doctrine of *stare decisis,* but whether that decision bars this suit cannot be considered upon motion to dismiss. The scope of that decision, as a precedent, is limited to questions there presented for adjudication and necessarily decided. The majority opinion therein shows upon its face that the validity of section 4 of the ordinance here involved was before the court for decision and was found valid.

At the conclusion of the opinion it was said:

"With due regard to our function in the case, I think we should declare the ordinance before us valid as against the objections urged."

The court function was to pass upon specific objections urged. That was done, and as to such objections the ordinance was held valid. The opinion did not undertake to hold the ordinance valid as against all possible objections thereto and certainly not as to provisions not then before the court. If the opinion had so held it would, in that respect, be no more than judicial *dictum* and no precedent under the doctrine of *stare decisis.*

The statement in the minority opinion that, "In all other respects it (the ordinance) is valid," was *obiter dicta,* and, for that reason, as well as not being the opinion of the court, no precedent.

The case of *People* v. *Harley,* 230 Mich 676, involved the validity of an ordinance of the city of Highland Park. The ordinance was held valid against objections raised, but the writer of this opinion in concurring stated:

"I reserve decision on some of the provisions of the ordinance, not mentioned by Mr. Justice Moore,

until presented in a case demanding their consideration.''

This, undoubtedly, was excess precaution, for, of course, the decision did not and could not run beyond points involved under objections urged, yet it illustrates the rule that only points urged and decided rise to the dignity of precedents.

But counsel for the city say that in the first attack upon the ordinance all objections thereto should have been presented, and that no plaintiff therein or privies could reserve objections to be urged piecemeal. This contention, if it has merit, must come under a plea in bar raising such an issue, and, manifestly, cannot be considered upon the sufficiency of a bill in which there is not the remotest reference to former litigation. We are not, therefore, concerned at this time with the question of whether plaintiffs are estopped by former adjudication.

Decisions in the Wayne circuit may or may not afford ground for application of the rule of *res adjudicata,* but, of course, constitute no precedent under the doctrine of *stare decisis.* This brings us to the question of whether the bill of complaint states a case in equity.

The circuit judge, in denying the motion to dismiss the bill, well stated succinct reasons, from which we quote the following:

"Again, section 3 (of the ordinance) provides:

" 'The mayor is hereby authorized to grant licenses for the purpose aforesaid to any citizen of the United States who shall have been a resident of the city of Detroit for at least one year prior to his application for such license.' * * *

"An important constitutional question is here this time directly raised, as to whether an ordinance can discriminate as between residents and nonresidents.

"Section 3 also provides for the licensee executing a bond to the city of Detroit in the sum of $1,000 covering, amongst other things, any judgment rendered in any court against the applicant, arising out of damage or injury to any person or persons or property, caused by the negligent operation of such jitney.

"And then section 3 provides as follows:

"'Said bond shall be in such form as to indemnify, as per the terms of this section, when such jitney or jitneys are being operated in any locality, either within *or without the limits* of the city of Detroit. Any person, firm or corporation who sustains damage by reason of such jitney being operated in violation of the provisions of such bond, may in the name of the people of the city of Detroit, institute action upon the same and recover the damages sustained by him.'

"Of course it is elementary as a general rule that a municipal corporation has no legislative control or authority outside its corporate limits. A city has no control over torts committed outside its corporate limits; it has no control of the highways outside its corporate limits. There is a great question as to whether this bond provision of section 3 is valid, and if it is not, what effect does it have upon the balance of the ordinance?

"Again, section 3 provides that:

"'The mayor of the city of Detroit is hereby authorized to refuse to grant a license to any applicant applying for the same as specified herein, or revoke any license by him issued at any time for cause shown. It is hereby made discretionary upon the part of the mayor of the city of Detroit to issue or revoke said licenses.'

"These two sentences are repeated almost word for word in section 5.

"Section 5 also provides that:

"'The mayor is hereby authorized to grant jitney driver licenses to citizens of the United States,

residents of the city of Detroit for one year prior to application, of the age of twenty-one years and upwards, of good character, sound physique and not subject to any infirmity of body or mind which might render such driver unfit for the safe operation of a jitney.' * * *

"These provisions raise another interesting question as to whether an ordinance can give the mayor discretionary power to grant · or revoke licenses. If this was an ordinance that was dealing with the licensing of any business in which one has a natural right to engage, the answer, from the authorities, would clearly be 'No.' One, however, does not have the right to use the streets of the city for hire. This being so, perhaps the city can give the mayor the right to grant or revoke such licenses at will. Generally speaking, however, an ordinance of this character must lay down some standard of fitness with which to measure applicants, provide a method for the application for licenses, and contain qualifications which the applicant must possess. Also, generally speaking, the granting or refusal of a license must not be left to an arbitrary or capricious exercise of power. This general rule, however, may not apply to one seeking the right to use the streets for hire. Again, it may be that no one can complain of these provisions except one who has been refused a license through the exercise of this arbitrary power.

"This ordinance contains another provision in section 14 that is brand new in municipal ordinances, and which raises another question.

"Section 14 provides:

" 'Where adjacent municipalities, incorporated towns or villages have an ordinance or a regulation *similar* to that in force in the city of Detroit regulating jitneys then it may be lawful for a resident or residents of such adjacent municipality, incorporated town or village to operate jitneys upon the streets of the city of Detroit; provided, that a non-

resident so operating shall furnish proof to any police officer in the city of Detroit, upon request, that he possesses a license issued by said municipality, incorporated town or village, or a bond conditioned as per the terms of sections 3 and 5 of this ordinance; Provided, further, that the route to be traveled by such nonresident so operating in the city of Detroit shall be designated by the police department; Provided, further, that this shall not apply to a resident or residents of municipalities, incorporated towns or villages unless a like privilege is extended to resident or residents of the city of Detroit by such municipality, incorporated town or village.'

"It would be possible, if it was determined by some one, I do not know whom, that Highland Park, for instance, had an ordinance *similar* to this one, that one could get a right to operate under the Highland Park ordinance and then secure a route from the city limits of Highland Park down to the center of the city of Detroit over a street that he could not get the right to operate upon under this ordinance itself. If this could be done the police department, of course, would have greater power than the mayor and one could secure indirectly what he could not secure directly. On account of Detroit entirely surrounding two municipalities, again, as a matter of pure practicality, the reciprocal right provided for in this section could not be used or exercised unless part of the streets at least mentioned in section 4 were used. Either this section is unworkable entirely, due to the language of section 4, or if any attempt was ever made to use it on account of the conditions existing between the adjacent municipalities and the city of Detroit, the provisions of section 4 would have to be lifted or waived as to those seeking the right to use the streets of the city of Detroit under section 14.

"Therefore, again, if this section can be attacked

in this suit, it being apparent that it is unworkable in connection with section 4, what is the effect on the ordinance itself if this particular section is declared unworkable or invalid?

"Other questions were raised and discussed on the argument and in the briefs, but I think I have mentioned a sufficient number to show that there are several complicated legal questions involved, and that they are of such a nature that they should not be decided upon a mere argument of a motion for a temporary injunction, or a motion to dismiss the bill. These are all questions that should be determined at the final hearing of the case when testimony can be taken and each question gone into thoroughly and finally disposed of after a full and complete hearing. That will dispose of all questions finally, at least as far as this court is concerned.

"I think, therefore, for these reasons that the motion for a temporary injunction should be granted and that a temporary injunction should issue, to continue until the final hearing of this cause in this court, and that the motion to dismiss the bill of complaint in this case should be denied. An order may be entered in accordance with this opinion."

The order in the circuit should be affirmed, with costs to plaintiffs.

North, J., concurred in the result.

Fellows, J. I agree with Mr. Justice Wiest that *res adjudicata* may not be urged on a motion to dismiss. I agree with him in the main in his discussion of the doctrine of *stare decisis.* I do not agree with him when he follows the conclusion of the learned trial judge that, due to the importance of the questions raised by plaintiff, there should be a further delay to permit the taking of testimony in order to determine whether an ordinance held valid

by a majority of this court over two years ago should be enforced. In *Red Star Motor Drivers' Ass'n v. City of Detroit,* 234 Mich. 398, months were consumed in the taking of testimony, and while some of it was considered on minor questions and it was discussed at some length in the minority opinion, the majority opinion upon the controlling question in the case entirely disregarded the testimony and disposed of the case on questions of law pure and simple, and held as matter of law: (1) That under the Constitution the city of Detroit had reasonable control over its streets, and (2) that it was not an unreasonable regulation for the city to say what streets could be and what streets could not be used by jitneys for commercial purposes. The ordinance in question was signed by the mayor May 29, 1922. By its terms it became effective October 1st, following. For over six years by order of some court or other the city has been restrained from enforcing it. I think it is high time that the restraint of the courts on the city of Detroit should be released and it be permitted to exercise the right secured to it by the Constitution of reasonable control of its streets.

The bill before us is an injunction bill pure and simple. While the question of former adjudication is not before us, the question on this motion to dismiss is before us of whether there is any equity in the bill, whether, assuming all the facts properly pleaded in the bill to be true, the ordinance is an invalid, unenforceable, unworkable piece of municipal legislation justifying and requiring the court by its injunction to inhibit its enforcement. I think that question is before us on this bill and motion to dismiss, and that it is our duty to decide that question and to decide it right now. The case of

necessity centers around section 4 of the ordinance. This is the section limiting the routes. If this section is valid and enforceable, no beneficial relief can be granted plaintiffs; accepting the allegations of the bill as true, as we must, the jitneys are out of business in Detroit unless the enforcement of the provisions of this section is restrained. Paragraph 24 of the bill before us is as follows:

"Section 4 of said ordinance provides as follows:

" 'Every person, persons, firm or corporation operating any jitney shall supply the police department of the city of Detroit with the name, number and address of the owner and driver of, and route upon which any jitney shall travel and make a prompt report showing any change regarding the same, provided, however, jitneys are hereby excluded from operating on Fort street west, Fort street east, Michigan avenue, Grand River avenue, Cass avenue, John R. street and the parks and boulevards described in chapter 65 of the Compiled Ordinances of 1920.'

"The streets mentioned in the above quoted section from which jitneys are excluded are the main thoroughfares of said city and the only thoroughfares upon which there is a demand for jitney service and on which such service will be of any benefit to the traveling public. The exclusion of jitneys from said thoroughfares means annihilation of jitney service in the city of Detroit."

It must, therefore, be patent that plaintiffs can have no beneficial relief here and that the city should not be restrained from enforcing the ordinance, unless one of two things happen in this lawsuit, i. e.: (1) That this court recede from its holding that the city under the Constitution has reasonable control over its streets and exercising such control may prescribe routes for common carriers, for jitneys, or

(2) the court finds such invalidities in other provisions of the ordinance or proceedings in its adoption as will render the entire ordinance a nullity. One of these two things must happen or plaintiffs' bill should be dismissed. I am not prepared to recede from the former holding; I am not persuaded that there were any defects in the enactment or promulgation of the ordinance; I am not satisfied that there are any defects in the ordinance of sufficient importance to render the ordinance void *in toto*.

By joining many classes of plaintiffs, it is sought to attack the ordinance from every conceivable angle. Both associations of jitney owners and drivers, plaintiffs before, are again with us; their officers are joined; individual owners and drivers are joined; residents of Highland Park also come in; owners of land in territory served by jitneys also join. As to this latter class, defendants claim they are not proper plaintiffs. I do not think they are proper plaintiffs. *Home Telephone Co.* v. *Michigan Railroad Commission*, 174 Mich. 219. But if they are proper plaintiffs they would not be entitled to any relief unless the ordinance is invalid. Their joinder neither helps nor hurts plaintiffs' case.

1. It is insisted that the ordinance was not legally promulgated. This goes to the validity of the entire ordinance. If this claim is well grounded, plaintiffs are entitled to the relief prayed. Section 20, chap. 1, tit. 3 of the charter of the city of Detroit is as follows:

"All ordinances shall be published immediately after their approval for three successive days in a daily newspaper printed in the English language in the city. A compilation of all the ordinances of the city shall be made by the city clerk at least once every two years."

The ordinance was approved by the mayor May 29, 1922; as noted, it took effect October 1st, following. It was published in the Detroit Legal News on June 3, 5 and 6 (May 30 being Decoration Day and June 4 being Sunday). It is insisted that this was not "immediately" in accordance with the provision of the charter, that the Detroit Legal News was not a newspaper within the requirement of the charter, and that three publications were not sufficient; that there should have been four.

The consensus of opinion is that the word "immediately" when used as here is synonymous with the words "without delay." In *Sheldon* v. *Wright*, 7 Barb. (N. Y.) 39, the provision of the statute was as follows:

\* \* \* "which order shall immediately thereafter be published for four weeks successively in two or more of the public newspapers printed in this State, one of which shall be the paper, if any, published in the county where probate of any such will shall be had or administration granted."

It was held that the statute should be followed in order to give the court jurisdiction, and it was said:

"I think, however, that the proof in this case clearly establishes a compliance with the law in this respect. 1st. With respect to the time of the first publication of the order, the statute is that the order shall be immediately published, etc.; and it was contended upon the argument, that as the order was made on the 6th of September, and the first publication in one of the newspapers not until the 27th, it was not immediately published. In most cases it would be impossible to comply with the statute literally, if by the word 'immediately' it is to be understood instantly, or upon the same day of making the order. I think the statute only requires the pub-

lication to be four successive weeks before the day of showing cause, and that the only force which can be given to the word 'immediately' is a direction that the order be published as soon as conveniently may be. Any other construction would be impracticable.''

In *State* v. *St. Paul Trust Co.,* 76 Minn. 423 (79 N. W. 543), it was said:

''The statute, as before noticed, requires the treasurer to make out the list on April 1, and immediately to certify and file it with the clerk. This word 'immediately' is to be given a rational construction, and it does not, in legal proceedings or in statutes, necessarily import the exclusion of any interval of time. It is a word of no very definite signification, and it is much in subjection to its grammatical and other connections. *Gaddis* v. *Howell,* 31 N. J. Law, 313, and cases cited. Here, from its very connection, it must mean within a reasonable time, because it would be impossible for the treasurer to make up his list and to certify and file it on the same day,—except, perhaps, in one of the smaller counties.''

See, also, *State, ex rel. Cothren,* v. *Lean,* 9 Wis. 279; *Fidelity & Deposit Co.* v. *Courtney,* 103 Fed. 599; *Maloney* v. *Rogers,* 6 Kulp (Luzerne Legal Register, Pa.), 289; *Fidelity & Deposit Co. of Maryland* v. *Robertson,* 136 Ala. 379 (34 South. 933); *State* v. *Clevenger,* 20 Mo. App. 626. The ordinance in question did not take effect until October 1st, a holiday intervened between its approval and its first publication, some time was required by the city clerk to prepare the copy, read proof and attend to his other duties. I think the publication was ''immediately'' in contemplation of the law. The ordinance was published on three successive days; this is all

the charter requires. The Detroit Legal News is a daily newspaper printed in the English language in the city of Detroit; it prints news of the courts, legal notices, and proceedings. Publication of the ordinance in it was a compliance with the charter: *Hoock* v. *Sloman*, 155 Mich. 1. It is urged that the clerk did not record it and it was not authenticated in accordance with section 3002, 1 Comp. Laws 1915. This provision relates to cities of the fourth class. Our attention is not called to any similar provision of the charter of Detroit. If there is such provision it is directory. *Vernakes* v. *City of South Haven*, 166 Mich. 595. I think the ordinance was validly promulgated.

2. It is insisted that sections 3 and 5 of the ordinance vest arbitrary authority in the mayor to grant or refuse to grant and to revoke licenses to jitney owners and jitney drivers. I do not think these sections are open to this objection. As to owners, the applicant must be 21 years or over, of good moral character, not addicted to the use of intoxicating liquor, and one who has not been convicted of a felony within a year prior to the application. A driver, in addition to these qualifications, must also be of sound physique, not subject to any infirmity of body or mind which would make him unfit to drive the car, and be able to read and write the English language. These requirements set up certain standards which must be met. Obviously there must be vested somewhere in some officer power to pass upon the fitness of the applicants. In *Melconian* v. *City of Grand Rapids*, 218 Mich. 397, 405, Mr. Justice Sharpe, who wrote for the court, said:

"The only restriction on the control which the city may exercise over its streets under the constitutional provision is that it must be reasonable. The

authority to grant a license must be conferred upon some person, body or commission. When the regulation affects private rights, it is held as a general rule that the requirements for obtaining a license must be so specifically pointed out in the ordinance as to permit all applicants who comply therewith to secure a license as a matter of right and that an arbitrary discretion to grant or refuse may not be conferred. In cases where the public health or safety is involved, this rule has been relaxed and a provision conferring discretionary power has been sustained.  *  *  *

"Where, however, the subject-matter sought to be controlled is one to which an applicant has a permissive right only, many courts have gone far in holding that the validity of the provisions under which such right may be attained cannot be questioned."

See, also, *Hyma* v. *Seeger,* 233 Mich. 659.

3. It is said that this ordinance is in conflict with Act No. 209, Pub. Acts 1923, and that it deprives the Michigan public utilities commission of jurisdiction over these common carriers, but in *Red Star Motor Drivers' Ass'n* v. *Michigan Public Utilities Commission,* 235 Mich. 85, this court, at the suit of one of these plaintiffs, held that act not applicable to plaintiff, and in *Highway Motorbus Co.* v. *City of Lansing,* 238 Mich. 146, it was urged that the carriers were under the control of the commission, hence immune from city legislation. We sustained the constitutional right of the city to reasonable control of its streets and said:

"Such reasonable control may not be taken from them by the courts, by individuals, by administrative bodies or by the legislature itself."

4. The provisions of section 14 providing for reciprocal arrangements with jitneys licensed by

adjacent municipalities is also assailed, the following provision being the subject of attack:

"Provided, further, that the route to be traveled by such nonresident so operating in the city of Detroit shall be designated by the police department."

It is urged that this proviso permits the police department to allow outside jitneys to use the prohibited streets while withdrawing them from resident owners and drivers. Such a construction is untenable. We have quoted section 4. It prohibits all jitneys from using the excepted streets, whether they be locally owned or owned outside. The only reasonable construction of this reciprocal arrangement is that all jitneys are prohibited from using the excepted streets, but that the police department may permit outsiders to use other streets to be named by the department. So construed the plaintiffs are not discriminated against.

5. The provision limiting the granting of licenses to residents of Detroit is of very doubtful validity. If a nonresident of Detroit was here presenting himself as an applicant for a license as owner or driver, and met the requirements of the ordinance, we would no doubt give heed to his plaint. But no such party is before the court. Nonresidents of Detroit are made plaintiffs, but none of them are asking for a license; all of them are demanding the right to use Woodward avenue and the other prohibited streets without license and in violation of the ordinances. I shall presently call attention to some cases dealing with this situation.

6. What I have just said is applicable to the objection to the requirement that a bond be furnished as indemnity from damages done while operating

either within or without the city limits, although there is much less doubt about its validity than the other provisions. It could possibly be sustained in its entirety under the particular facts existing in Detroit. Generally, a city, in the absence of a grant of such power, may not enact legislation applicable outside its limits. But Detroit entirely surrounds two independent cities. Some of the jitneys operate through these cities, carrying their passengers out of and back into the city of Detroit to complete their journey. It may be that the city could lawfully impose such requirement. But we need not decide such question. No driver or owner is here seeking a license without bond or with bond.

7. Two cases, both written by Justice STEERE, illustrate the point suggested under (5) and (6). In *Hughes* v. *City of Detroit,* 217 Mich. 567, some 300 hucksters joined in a bill to restrain the enforcement of an ordinance of the city. It will be noted that residents of Detroit alone were entitled to the licenses issued under the ordinance. In its main provisions the ordinance was sustained. None of the plaintiffs had applied for a license under its terms. A decree dismissing their bill was affirmed. In *Goldstein* v. *City of Hamtramck,* 227 Mich. 263, the ordinance likewise limited the granting of licenses to residents of the city. Plaintiff, a nonresident who had an established trade in defendant city, tendered a bond and the license fee and applied for a license, which was refused. He filed his bill asking that the ordinance be declared invalid. The defendant urged that, under the *Hughes Case,* the bill should be dismissed. This court held that, upon the case as made, plaintiff had been discriminated against and his bill was sustained. In the instant case it is manifest that all the plaintiffs who are resi-

dents of Detroit fall within the reasoning of the *Hughes Case,* and it is equally manifest that those of plaintiffs who reside in Highland Park have not taken such preliminary steps as would bring them within the *Goldstein Case.*

Outside the objections to section 4, which we have held were untenable, and the objections to the promulgation of the ordinance which I think are also untenable, the objections are aimed at unimportant provisions of the ordinance, provisions which could go out and still leave a workable law. I have given consideration to all the objections urged, and outside the two just referred to, I think the ordinance could be sustained as a workable ordinance if all such objections were sustained. In one of the leading cases cited by plaintiffs (*Robison* v. *Miner and Haug,* 68 Mich. 549), four of the important provisions of a then recently enacted liquor law were held to be unconstitutional, but the act with these eliminations was nevertheless sustained. Mr. Justice CAMPBELL, who wrote for the court, said in concluding the opinion:

"The important question remains, how far the objections referred to destroy the statute. Although there is some difficulty in assuming that the legislature would have passed the statute as it must be modified, yet it must be presumed they would have yielded to the constitutional objections if plainly pointed out; and in most other respects the law does not differ in principle from the existing legislation, and the new taxes and penalties not involving the peculiar disabilities named are valid, as well as the new methods of prosecution in the upper instead of the justices' courts. We therefore hold that, except as we have before pointed out, the law may be enforced. If difficulties arise upon points not considered by us, they will have to be dealt with as they

arise; but there is no likelihood that there will be any such trouble in enforcing the essential parts of the law, and we cannot anticipate any serious question with the light we have received from the argument."

Section 18 of the ordinance in question is as follows:

"Section 18. If any clause, sentence, paragraph or part of this ordinance shall for any reason be adjudged or decreed to be invalid by any court of competent jurisdiction, such judgment or decree shall not affect, impair or invalidate the remainder of this ordinance, but shall be confined to its operation to the clause, sentence, paragraph or part hereof directly involved in the controversy in which said judgment or decree shall have been rendered."

8. It is finally insisted by plaintiffs' counsel that under section 13753, 3 Comp. Laws 1915, he is entitled as matter of right to file an amended bill if it be found that the bill now before us does not state a case for equitable relief. But this statute has been construed by this court not to be mandatory and to go no further than the former rule. *Macomber* v. *Cottrell,* 162 Mich. 718. In that case the court had before it both the rule and the statute and it was held (quoting from the syllabus):

"Although Chancery Rule 9, subd. e, requires that after a demurrer to the bill of complaint has been sustained, the complainant be given an opportunity to amend, the bill may be dismissed unless it can be effectively amended.

"Act No. 299, Pub. Acts 1909, amending 1 Comp. Laws, § 549, is declaratory of the pre-existing practice in circuit courts as to the right to amend, and is not intended to confer an absolute right to amend in all cases, where the demurrer is sustained on appeal."

The court in that case placed reliance on *Bigelow* v. *Sanford,* 98 Mich. 657, 662, where it was held:

"On sustaining a demurrer which goes to the merits of the whole bill; the bill may be dismissed, but, on the allowance of a special demurrer of this nature, where the objection can be obviated by simply striking out the objectionable feature, the court should give an opportunity for amendment."

The motion to dismiss in the instant case goes to the merits of the whole bill. Under the former practice, it would have been a general demurrer. I think the practice permits this court, in its discretion, and when justice requires, on sustaining a motion to dismiss, to remand the case to the circuit with leave to there apply for permission to file an amended bill, but I do not feel that in this case justice requires such a course. I believe it would be an abuse of discretion to further prolong this already protracted litigation. For over six years the city has been restrained from enforcing this valid ordinance. The bill before us is the second amended bill. Already plaintiff has been permitted to amend not only once but twice.

The order appealed from is reversed and a decree here entered dismissing plaintiffs' bill, with costs of both courts.

FEAD, C. J., and CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred with FELLOWS, J.