## DOROTHY H. HOWE
*vs.*
## ZONING COMMISSION OF THE CITY OF NORWALK

Court of Common Pleas    Fairfield County    File No. 45652

MEMORANDUM FILED JUNE 28, 1945

*Keogh and Candee*, of Norwalk, for the Plaintiff.

*Frederick Lovejoy, Jr.*, of South Norwalk, for the Defendant.

CULLINAN, J.  By its action of December 6, 1944, in amending the zoning regulations and zone boundaries of the City of Norwalk so as to convert a business zone into a light industrial zone, the defendant commission is said to have worked a substantial injustice to property owners adjacent to the affected area, among whom is the plaintiff.  Her challenge, by way of appeal, is many-sided, involving, as it does, constitutional claims, allegations of procedural irregularity, claimed bias and prejudice on the part of the zoning commissioners, and an all-inclusive claim stemming from an allegation of arbitrary and illegal conduct.

Norwalk, in common with seven additional Connecticut towns and cities, experienced its first contact with zoning

through enactment of chapter 279 of the Public Acts of 1923. This act empowered the Common Council of Norwalk to appoint a zoning commission with a term of office determined by ordinance or regulation, and, in the same manner, to appoint a board of adjustment. On or about July 24, 1923, Norwalk, acting through its council, appointed a zoning commission which has been in existence ever since. No attempt was made, however, to formulate zoning regulations or to fix zone boundaries under authority of the Public Acts of 1923.

Thereafter, the general zoning law of Connecticut was enacted through the terms of chapter 242 of the Public Acts of 1925. Pursuant to its provisions, the Zoning Commission of Norwalk, as of October 16, 1929, and for the first time, adopted a typical comprehensive set of zoning regulations, at the same time delineating zone boundaries.

Concededly, chapter 242 of the Public Acts of 1925 was not approved by the Governor within the three-day period prescribed by the Constitution and under the holding in *State vs. McCook*, 109 Conn. 621, was void.

In August, 1929, however, a special session of the General Assembly was convened for the express purpose "of enacting legislation making effective the purposes and accomplishing the same results as would have been effected and accomplished by, those acts of the present and previous General Assemblies, which were passed by the Senate and House of Representatives, presented to the Governor of the State in each of such years upon the final adjournment of the General Assembly, but which acts were not signed by the Governor within three calendar days (Sundays excepted) after the final adjournment of the General Assembly in each of said years, had said acts been valid when passed." *Governor's Message to the General Assembly, August 6*, 1929, *Connecticut Senate Journal* (Special Session) pp. 31, 36, 37.

Pursuant to the above direction, the General Assembly enacted five broad enabling or curative acts designed to validate measures which had been declared void by the *McCook* decision. A primary question is: Was chapter 242 of the Public Acts of 1925, the general zoning law of the State, validated by action of the General Assembly at its special session of August 6, 1929?

The issue was presented to our Supreme Court of Errors in *Coombs vs. Larson,* 112 Conn. 236, wherein the plaintiffs, alleging to have been aggrieved by official action of a building inspector of the Town of West Hartford, contended, in one of their many claims, that the General Assembly, at its special session in 1929, was without power to validate chapter 242 of the Public Acts of 1925. The controversy remained unde' termined, however, when the Supreme Court, in the *Coombs* case, declined to entertain the constitutional question by reason of the fact that the plaintiffs therein were said to have waived any rights which they may have had to press that claim. Thus, the primary question appears to continue to remain open for determination.

A close reading of the five curative acts of 1929, together with the cases determined after *State vs. McCook, supra,* would seem to lead to the logical conclusion that chapter 242 of the Public Acts of 1925, the State's general zoning law, was validated and reenacted at the special session of 1929. *Pickett, Pros. Atty. vs. Marcucci's Liquors,* 112 Conn. 169, 181, and *Morehouse vs. Employers' Liability Assurance Corp.,* 119 *id.* 416, 421, point the way to this conclusion. Accordingly, from and after August 6, 1929, chapter 242 of the Public Acts of 1925 was valid and existing law of the State of Connecticut. The zoning ordinance of Norwalk, effective October 16, 1929, was adopted under the provisions of chapter 242 of the Public Acts of 1925. Since this act became constitutional through its validation on August 6, 1929, the zoning ordinance of Nor' walk is equally valid, constitutional and effective, having been adopted subsequent thereto and in reliance thereon.

When Norwalk, as of October 16, 1929, adopted its zoning regulations and fixed its zone boundaries, the land on both sides of Connecticut Avenue therein, from Armory Hill to the Darien town line and to a depth of approximately 200 feet, was ,designated a business No. 1 zone. Thus it remained until December 6, 1944, when the Zoning Commission of Norwalk, by unanimous vote, converted it to a light industrial zone, ex' tending the depth of the new zone from 530 feet in one part to approximately 285 feet in another from the center line of the traveled portion of the highway (Connecticut Avenue).

Mrs. Howe, the appellant, resides on Flax Hill Road, in a B residence zone. Her dwelling is situated approximately 2,000 feet south of Connecticut Avenue. It is her contention that

she will be prejudiced by the change of zone; that the change of zone is unnecessary, impractical, and imprudent; and that the zoning commission acted arbitrarily and in abuse of its discretion.

Apart from the constitutional considerations which have now been resolved against her, the appellant's second line of attack is directed to claimed procedural irregularities and improprieties of the zoning commission. These run the range from claimed inadequate notice of the public hearing on the proposed zone change to claimed bias and prejudice on the part of the zoning commissioners, who are said to have been improperly influenced by a campaign of propaganda and indoctrination stimulated by the Norwalk Chamber of Commerce.

Section XIX of Norwalk's zoning ordinance provides: "These regulations may from time to time be amended, changed or repealed by the Zoning Commission as provided in chapter 242 of the Public Acts of 1925." Section 5 of chapter 242 has now become section 425 of the General Statutes, Revision of 1930, as amended by section 132e of the 1939 Supplement to the General Statutes. Thus, in the matter of zoning amendments, changes or repeal, the Norwalk Zoning Commission in November and December, 1944, was bound by the provisions of section 132e of the 1939 Supplement, reading as follows: "Such zoning authority shall provide for the manner in which such regulations and the boundaries of such districts shall be respectively enforced and established and amended or changed. No such regulation or boundary shall become effective or be established until after a public hearing in relation thereto, held by the zoning authority or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days and the last not less than two days before such hearing. Such regulations and boundaries may, from time to time, be amended, changed or repealed by such zoning authority. If a protest shall be filed with the zoning authority against such change, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending one hundred feet therefrom, or of those directly opposite thereto extending one

hundred feet from the street frontage of such opposite lots, such change shall not become effective except by unanimous vote of the zoning authority if such zoning authority is a zoning commission, or a vote of three-fourths of all the members of any other such zoning authority. The provisions of this section relative to public hearings and official notice shall apply to all changes or amendments. Zoning regulations or changes therein shall become effective at such time as may be fixed by the zoning authority, provided notice thereof shall have been published in a newspaper having a substantial circulation in the municipality before such effective date. Whenever a zoning authority or a board of appeals shall make any change in a zoning regulation or the boundaries of a zoning district, it shall state upon its records the reason why such change is made."

That there was a public hearing concerning the change of business zone to a light industrial zone is not questioned. It was held on November 9, 1944, by the Zoning Commission of Norwalk at the Council Chambers, City Hall, South Norwalk. All the members of the zoning commission attended the hearing and parties in interest and citizens were given an opportunity to be heard.

Notice of the hearing was published in the *Norwalk Hour* on October 30, 1944, and in the *Norwalk Evening Sentinel* on November 3, 1944, both newspapers having a substantial circulation in Norwalk. It is now said by the appellant that the aforesaid notices were not in conformity with section 132e of the 1939 Supplement since that section provides notice shall be given in *a* newspaper by two insertions, whereas the notice in question was published in *two* newspapers with a single insertion in each.

Obviously, the requirement of publication of notice of the hearing was designed to give adequate notice to the general public and interested parties. The time and frequency of publication must be determined by a reasonable construction in the light of all surrounding facts and circumstances. *Red Star Motor Drivers' Assn. vs. Detroit,* 244 Mich. 480, 221, N.W. 622. The appellant does not contend that she was prejudiced by publication in two newspapers rather than one, nor does she say that she was unaware of the public hearing of November 9, 1944. In fact, the transcript of the hearing shows that she attended to register herself in opposition to the proposed change. Publication requirements are frequently said

to be directory·rather than mandatory. *State ex rel. Peabody vs. Superior Court,* 77 Wash. 593, 138 Pac. 277; *Logan vs. Boonton,* 87 N.J.L. 449, 95 Atl. 141. Likewise, if actual notice has been received seasonably by an interested party, the method of conveying that notice would seem to be immaterial. *Bradley vs. Board of Zoning Adjustment,* 255 Mass. 160, 150 N.E. 892. I am satisfied that publication of notice of the public hearing was in substantial compliance with section 132e, hence valid.

Following its public hearing on November 9, 1944, the zoning commission reconvened on December 6, 1944, with its full membership present. By unanimous action the zone change was effected; a statement of the reasons for the change was spread upon the minutes of the meeting, and immediately there-after, on December 15, 1944, adequate notice of the action of the zoning commission was given by proper.newspaper pub-lication. Thus, the provisions of section 132e were followed with precision and care.

Concerning alleged bias and prejudice on the part of the zoning commissioners, little need be said since it is my con-sidered judgment that the claim is without merit. Mr. Thomas Kirkwood, a zoning commissioner, once served as a paid secre-tary of the Norwalk Chamber of Commerce. At the date of the zone change and for a considerable time prior thereto, however, he had had no association with that organization as a salaried employee. There is no doubt but that the Chamber of Commerce, as an organization and as an agency of public service, favored the zone change, believing it to be necessary for the orderly development of Norwalk. From time to time, as secretary of the Chamber of Commerce and thereafter, Mr. Kirkwood expressed himself, publicly and privately, as favoring the change, considering it prudent and reasonable. It is now said that the zoning commissioners were influenced and guided by the convictions of Mr. Kirkwood and that his presence on the commission brought about a prejudiced result. The short practical answer is that the contention does an injustice to Mr. Kirkwood, an informed, earnest, and reliable public official, who was prompted to advocate the zone change by a genuine belief in its merits rather than by any improper motives. The short legal answer is that "there is a presumption that such a board as the zoning commission has acted with fair and proper motives." *Strain vs. Mims,* 123 Conn. 275, 285...*See, also,*

*St. Patrick's Church Corp. vs. Daniels,* 113 Conn. 132, 139. I find nothing in the evidence to rebut this presumption.

Thus I am brought to a consideration of the appellant's final substantial claim, which is that in effecting the controversial zone change the appellee acted arbitrarily and in abuse of its discretion. Analysis of the content of the litigation enables me to find the following facts and conclusions as well as to indicate pertinent legal principles essential to the final result:

1. The area which has been rezoned and which is the subject of this appeal is familiarly known as the Old Post Road and extends from Armory Hill to the Darien line, a distance of approximately two miles.

2. The City of Norwalk, with the advent of zoning in 1929, was divided into eight zones. The area in controversy was originally classified as a business zone, No. 1.

3. Some years thereafter the Merritt Parkway was constructed and opened as a through highway for passenger vehicles.

4. The passenger vehicular traffic, which formerly passed over the Old Post Road, was immediately diverted to the Merritt Parkway and continues to be so diverted.

5. In consequence, the Old Post Road has been and is used almost exclusively for through truck traffic. This highway is resorted to by a veritable stream of large, cumbrous trucks with their substantial loads and resultant noise.

6. Some time in 1942, officials and directors of the Norwalk Chamber of Commerce sensed the transition which had occurred and became aware of the fact that passenger vehicular traffic has deserted the Old Post Road, leaving nothing but an unending truck parade.

7. The practical result of the transition, from a property standpoint, was that the area had no further appeal for prospective home builders who were unwilling to live with the noise and confusion of a truck highway.

8. Further, the area lost its value for the purpose for which it was originally zoned, namely, business. Retail merchants were unwilling to hazard business investments in the area for the obvious reason that no retail buyers were using the highway.

In addition, the nonexistence or paucity of a neighborhood trade did not enhance business or retail prospects.

9. Thus the controversial area took on every aspect of a blighted zone without residential or business potentialities. This condition continues at the present time and was completely apparent in my personal inspection of the district.

10. Alert and intelligent planners of the future of Norwalk quickly discovered that a change of zone offered the only practical and reasonable approach to the problem. Obviously the area is suited to light industry. Accordingly, a move was initiated to bring about this necessary and prudent use.

11. The zoning ordinance was amended by the appellee with due and careful consideration of the general zoning plan of Norwalk. The amendment will promote the general welfare of Norwalk. It was made in accordance with reasonable consideration as to the character of the district and its peculiar suitability for the proposed use and with a view to encouraging its most appropriate use.

12. The adopted amendment is not unjust, arbitrary, unreasonable or an abuse of the legislative discretion; nor did fraud, corruption, improper motives or influences, disregard of duty, abuse of power or violation of law enter into its enactment.

13. By reason of the change of zone, new industries will, in all probability, be attracted to Norwalk. Undoubtedly there will be erected in the zoned area modern, sanitary, and safe industrial plants to furnish post-war employment, necessary payrolls and increased purchasing power in the community.

14. Norwalk's presently available light industrial areas, apart from the one in controversy, offer neither space nor location conducive to attracting new industries.

15. "Courts will not substitute their judgment for the legislative judgment when [the] considerations are fairly debatable. They will regard their validity, their necessity and their wisdom from the standpoint of existing conditions and present times." State vs. Hillman, 110 Conn. 92, 105.

16. The appellant claims she will suffer direct damage and prejudice as a result of the zone change. This allegation is not supported by the evidence. Her property is located a sufficient

distance from the zoned area so as to be beyond any direct prejudice. Further there stretches between the zoned area and her property a rolling and hilly countryside which completely removes any contact with the light industrial zone and obscures vision of any industrial plants which may subsequently be erected therein.

17. If the appellant has suffered any damage by the zone change, it is indirect and quite incidental to measures taken in the promotion of the public welfare.

18. The record amply supports the determination, to which the function of the courts on appeal is limited, that the zoning commission has not acted arbitrarily or illegally, or so unreasonably as to have abused its discretion. *Blake vs. Board of Appeals*, 117 Conn. 527; *Piccolo vs. West Haven*, 120 *id.* 449.

19. "Zoning regulations are adopted in the exercise of the police power of the State and to be valid must have a rational relation to the health, safety, welfare and prosperity of the community." *Strain vs. Mims*, 123 Conn. 275, 285.

20. Applying this standard to the present matter, I am able to conclude that the zoned area has no reasonable use other than for light industrial purposes; that the present and future needs of Norwalk require that it have usable light industrial areas; that presently available areas in this class are unsuited to the needs of the community; and that the welfare of the community demands the zone change.

21. To grant the relief sought by the appellant would be to substitute my judgment for the legislative judgment of the appellee arrived at after full and fair consideration of the debatable considerations involved.

Judgment may enter dismissing the appeal.