HIGHWAY MOTORBUS CO. *v.* CITY OF LANSING.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—RIGHT TO
   REASONABLE CONTROL—CONSTITUTIONAL LAW.
     The right of municipalities to a reasonable control of
        their streets, secured to them by the Constitution (Art.
        8, § 28), may not be taken away by the courts, by in-
        dividuals, by administrative bodies, or by the legislature
        itself.

2. SAME — ORDINANCES — COMMON CARRIERS — INTERURBAN MOTOR
   BUSSES—CITY MAY DESIGNATE STREETS TO BE USED.
     A city has the right, under the Constitution (Art. 8, §
        28), to pass an ordinance licensing and regulating the
        operation of interurban and suburban motor busses within
        the city limits, prescribing the streets which may be used
        and inhibiting the use of other streets, although its en-
        forcement may result in inconvenience to passengers and
        loss of revenue to the operators.

Appeal from Ingham; Carr (Leland W.), J.    Sub-
mitted February 3, 1927.    (Docket No. 109.)    De-
cided April 1, 1927.

Bill by the Highway Motorbus Company and others
against the city of Lansing and others to enjoin the
enforcement of an ordinance.    From a decree dis-
missing the bill, plaintiffs appeal.    Affirmed.

*Ernest C. Smith,* for plaintiffs.

*D. G. F. Warner* and *J. E. Converse,* City Attorneys,
for defendants.

FELLOWS, J.    The plaintiffs operate bus lines from
various cities into the city of Lansing.    They file this

[1]Municipal Corporations, 28 Cyc. p. 849; [2]Id., 28 Cyc. pp. 851,
853 (Anno), 869 (Anno).

bill against the city and its officers to restrain them from enforcing an ordinance entitled:

"An ordinance to license and regulate the operation of interurban and suburban motor busses within the limits of the city of Lansing."

This ordinance prescribes the streets which may be used by interurban busses and inhibits the use or the acceptance or discharge of passengers on any other streets.    It is claimed as a practical proposition that the enforcement of the ordinance and limiting the operation of their busses to the streets named prevents the plaintiffs from accepting and delivering workmen to the principal industrial plants of the city, school children to the schools, the "picking up" and discharge of passengers at the leading hotels, and materially reduces the revenues of the respective plaintiffs, and it is insisted as a legal proposition that the ordinance is *ultra vires*.    It is also claimed that if it is within the power of the city to enact it, it is arbitrary in its terms and that it is void.    The case was tried, decided and appealed to this court before the decision of this court in *Red Star Motor Drivers' Ass'n* v. *City of Detroit*, 234 Mich. 398, was handed down.

We are unable to follow this contention of plaintiffs. In the Detroit case we had before us for consideration section 28 of article 8 of the Constitution, which broadened and expanded the rights of municipalities over their streets and which secured to them from the time of its adoption the reasonable control of their streets, alleys, and public places.    We there held the constitutional provision secured to the city the right to designate the streets and the only streets that could be used by a common carrier operating for personal gain.    The writer of the prevailing opinion there and the writer here expressed his personal view that the case was controlled by *Melconian* v. *City of Grand*

*Rapids,* 218 Mich. 397, and then speaking for the court said:

"I shall assume for the purpose of this case, and for that purpose only, that where the municipality seeks to regulate the use of its streets by a common carrier instead of exercising the power it possesses of prohibiting such use, its regulations must be reasonable, and that where constitutional rights of the individuals are involved the question of whether such regulation is reasonable presents a judicial question."

The authorities were then considered at some length, and it was held:

"These cases are in my judgment in consonance with the overwhelming weight of authority and demonstrate beyond cavil that the municipality has the power to regulate the business of operating jitneys on its streets and that in exercising such power it may designate the streets and the only streets which may be used for such business, and that the designation of streets other than those which are already congested is not unreasonable."

There, as here, a common carrier sought the use of the streets of the city for the conduct of its business. There, as here, the city invoked against such use its constitutional prerogative to the reasonable control of its streets. This constitutional provision, so long as it continues in force, secures such reasonable control to municipalities; we so held in that case. Such reasonable control may not be taken from them by the courts, by individuals, by administrative bodies or by the legislature itself.

But counsel insists that *People* v. *McGraw,* 184 Mich. 233, sustains his contention and certain excerpts are quoted from the opinion. If any doubts ever existed as to what was decided by that opinion, they were put at rest by Mr. Justice KUHN who wrote it in the later case of *Brennan* v. *Recorder of the City*

*of Detroit,* 207 Mich. 35.   He there said, speaking for
the court:

\* \* \* "but it is insisted that under the decision
in *People* v. *McGraw, supra,* the power reserved to
municipalities with reference to control of its streets
extends only to such subjects as are not covered by
the general State law.   In our opinion, this decision
should not be given any such construction.   The force
of that decision is that the rule of conduct established
by the State with reference to highways of a munici-
pality cannot be relaxed or made less stringent by a
city ordinance, but incidents that may be found neces-
sary by the legislative body to enforce the rule of con-
duct are not what was contemplated in the previous
decision when we said that the ordinance should not
contravene the State law. \* \* \* In the decision
of *People* v. *McGraw, supra,* it was held that section
9 of Act No. 318 of the Public Acts of 1909, which
attempted to prohibit municipalities from passing local
ordinances with reference to motor vehicles, was un-
constitutional and void, as it interfered with the con-
stitutional right of a municipality to the reasonable
control of its highways."

But we are persuaded that before the present Con-
stitution was adopted this question was settled ad-
versely to plaintiffs' contention.   Telephone companies
receive their charters from the State; with their right
to do business goes the right to use the highways for
their poles and the stringing of their wire.   But in
several cases where disagreements arose between them
and municipalities as to what streets should be used
for that purpose this court recognized the right of
the municipalities to the reasonable control of their
streets.   In *Michigan Telephone Co.* v. *City of St.
Joseph,* 121 Mich. 502 (47 L. R. A. 87, 80 Am. St.
Rep. 520), Chief Justice GRANT, speaking for the court,
said:

"The Constitution and the statute clothe munici-
palities with power to control their streets and alleys,
and protect them from things injurious and dangerous

to the public; hence they have the power to make all reasonable rules and regulations for the erection and maintenance of poles and wires for telegraph and telephone companies."

This was followed in *Village of Jonesville* v. *Telephone Co.*, 155 Mich. 86 (16 Ann. Cas. 439, 130 Am. St. Rep. 562), where the right of the village to exclude the poles from the business street of the village was upheld.    And in *Traverse City* v. *Telephone Co.*, 195 Mich. 373, Mr. Justice STEERE, speaking for the court, said:

"The right conferred by the general law upon telephone companies to use highways of the State as avenues of communication for their methods of transmitting messages and to establish their lines along them for that purpose does not confer the unrestricted right to invade cities and villages and erect their poles or string their wires where and as they may find it most economical or convenient. *Michigan Telephone Co.* v. *City of Benton Harbor*, 121 Mich. 512 (47 L. R. A. 104); *Village of Jonesville* v. *Telephone Co.*, 155 Mich. 86 (130 Am. St. Rep. 562, 16 Ann. Cas. 439). While the municipalities may not annul the general statute by arbitrarily refusing to permit the use of their streets to telephone companies, they may have under their charters, as in the instant case, controlling authority within reasonable limits, in the exercise of their police power, to direct upon which streets and in what manner the lines shall be installed, and may prohibit entirely the erection of poles on streets and in places which will injure or incommode the public."

In this case, as in the case of *Red Star Motor Drivers' Ass'n* v. *City of Detroit, supra,* there is testimony of inconvenience to passengers and loss to the operators of busses if the ordinance is enforced, and this was much pressed on the argument, and it was urged that its provisions are so arbitrary as to take them beyond the domain of reasonable control of the streets.    The same argument was urged in the other case but was

overruled.   It must be overruled here unless we enter the domain of policy of the legislation.   This we may not do.

The decree will be affirmed, with costs.

SHARPE, C. J., and SNOW, STEERE, and CLARK, JJ., concurred with FELLOWS, J.

WIEST, J. (*concurring*).   The opinion of this court in *Red Star Motor Drivers' Ass'n* v. *City of Detroit*, 234 Mich. 398, forces me to concur in the result.

BIRD and MCDONALD, JJ., concurred with WIEST, J.