NORTH STAR LINE, INC., *v.* CITY OF GRAND RAPIDS.

1. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—REASONABLE CONTROL OF STREETS—RIGHT OF STATE TO REGULATE HIGHWAYS.

   Subject to constitutional limitation reserving to cities, villages, and townships reasonable control of their streets, alleys and public places (Const., art. 8, § 28), control of highways is in State, except as delegated by legislative enactment to some State agency, and said power of State to regulate is applicable to use of highways within city limits as well as without.

2. SAME—REGULATION OF INTERURBAN MOTOR BUSSES—PRESUMPTION THAT STATE HAS COVERED FIELD.

   State having acted to regulate motor vehicles as common carriers on highways of State (Act No. 209, Pub. Acts 1923, 2 Comp. Laws 1929, § 11342 *et seq.*), it must be assumed that State has covered whole field relative thereto, subject only to constitutional right of cities, villages, and townships to reasonable control of their streets, alleys, and public places (Const., art. 8, § 28).

3. SAME—MUNICIPAL CORPORATIONS—ORDINANCES.

   In so far as city ordinance purporting to regulate operation of interurban motor busses goes into field in which State regulations are operative, said ordinance is invalid.

4. SAME—WHEN CITY ORDINANCE VALID.

   Provisions of city ordinance regulating operation of interurban motor busses may be sustained as valid if intended to be effective only within city limits, but if intended to be effective outside city limits, they are invalid.

5. SAME—PROVISION IN ORDINANCE FOR INSURANCE BY CARRIERS INVALID.

   Provision of city ordinance requiring operators of interurban motor busses to carry insurance protecting passengers and shippers against damage is invalid as invading field of supervision in which State is operating, notwithstanding further provision that applicant for license is permitted to file evidence with city clerk that he has complied with State law in regard thereto.

On constitutionality of statutes, or ordinances for taxation of common carriers by automobile, see annotation in 75 A. L. R. 13, 17.

6. SAME—POWER OF MUNICIPALITY TO REGULATE MOTOR VEHICLES AND REQUIRE PAYMENT OF FEE.

Municipality has power to enact ordinance for reasonable regulation of interurban motor busses so far as such regulation affects business wholly within city limits, and, if there is actual supervision incident to such regulation, carrier may be required to secure license and pay reasonable license fee.

7. MUNICIPAL CORPORATIONS—LICENSES—REASONABLENESS OF FEE.

In determining whether license fee is excessive, particular facts of each case are controlling.

8. SAME—LICENSE FEE MAY NOT BE IMPOSED AS TAX.

License fee must be gauged by expense incurred by municipality incident to issuing license and supervising business licensee carries on thereunder, if supervision is required; but license fee may not be imposed as tax measure in disguise.

9. SAME—MOTOR   VEHICLES—REGULATION—ORDINANCES—CONSTITUTIONAL LAW.

Among matters of proper and reasonable regulation of interurban motor busses by city within its own confines, notwithstanding State regulation, are that of prohibiting such busses from doing intra-city business, determining their routes over city streets, regulating rate of speed, requiring observation of traffic signals and parking regulations, designating place or places of receiving and discharging passengers, requiring reasonable station conveniences, etc.

10. SAME—EXCESSIVE LICENSE FEE.

In view of State regulation of interurban motor busses, and limited need of regulation and supervision by city, license fee under city ordinance should be practically nominal in amount, and therefore fee of $15 for each bus is *held,* excessive.

11. CONSTITUTIONAL LAW—STATUTES—RIGHT OF MUNICIPALITY TO REASONABLE CONTROL OF STREETS.

Act No. 209, Pub. Acts 1923 (2 Comp. Laws 1929, § 11342 *et seq.*), regulating operation of interurban motor busses, *held,* not to infringe upon constitutional rights of municipalities to locally exercise ''reasonable control'' over their streets, alleys, and public places (Const., art. 8, § 28), nor to conflict with provisions of Act No. 126, Pub. Acts 1929 (1 Comp. Laws 1929, § 2238), granting cities power to provide in their charters ''for the use, regulation, improvement and control of the surface of its streets, alleys, and public ways, and of the space above and beneath them.''

12. SAME—LICENSES—MOTOR VEHICLES—PROVISIONS OF ORDINANCE. Because city has constitutional right of reasonable control of its streets, as bearing upon determination of routes to be followed within city, stations, station accommodations, etc., city ordinance may require applicant for license to operate interurban motor bus to set forth in his application specified pertinent facts as to kind of vehicle to be used, maker's name, serial number, or other facts which will identify vehicle, its weight, seating capacity, etc.

Appeal from superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted June 9, 1932. (Docket No. 18, Calendar No. 35,931.) Decided September 16, 1932.

Bill by North Star Line, Incorporated, a Michigan corporation, and others against City of Grand Rapids, a municipal corporation, and others to enjoin enforcement of a city ordinance as to interurban motor busses. Division Avenue Bus Line, Incorporated, a Michigan corporation, and others intervened as plaintiffs. Bill dismissed. Plaintiffs appeal. Reversed.

*Francis L. Williams, William G. Fitzpatrick,* and *Sherman T. Handy,* for plaintiffs.

*Ganson Taggart (Clarence E. Page,* Assistant Corporation Counsel of Detroit, of counsel), for defendants.

NORTH, J. The plaintiffs herein are common carriers, each operating interurban motor busses over routes extending either into or through the city of Grand Rapids, which together with certain of its officers is a defendant herein. Each of plaintiffs has secured from the Michigan public utilities commission a permit to operate its interurban motor busses.

The bill of complaint was filed to enjoin the defendants from enforcing an ordinance of Grand Rapids which was enacted for the purpose of licensing and regulating the operation of interurban auto busses in the city. After hearing in the superior court of Grand Rapids a decree was entered dismissing plaintiffs' bill of complaint, and they have appealed.

The plaintiffs urge that this municipal ordinance is invalid. Among the 15 reasons assigned in support of this contention are the following:

"(9) That the city of Grand Rapids has no power to enact said ordinance.

"(12) That the city of Grand Rapids has no authority to require plaintiffs, all or any of them to comply with said ordinance before it can operate upon the streets of the city of Grand Rapids where said plaintiffs are operating by virtue of a certificate of convenience and necessity issued by the Michigan public utilities commission in accordance with the provisions of Act No. 209, Pub. Acts 1923 (2 Comp. Laws 1929, § 11342 *et seq.*)."

Determination of the questions presented necessitates consideration of the ordinance in the light of the Michigan constitutional provision and the statute under which the State has undertaken to regulate common carriers of persons and property by motor vehicles upon the public highways of this State. The constitutional provision is of primary importance. It reads:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships." Article 8, § 28.

Subject to the above constitutional limitation, the control of its highways is in the State except as dele-

gated by legislative enactment to some State agency. In the exercise of its power of general control over highways the legislature passed Act No. 209, Pub. Acts 1923, being 2 Comp. Laws 1929, § 11342 *et seq*. The title to this act and section 1 read:

"An act to regulate and define common carriers of persons and property by motor vehicle on public highways of this State, prescribing the payment and fixing the amount of privilege taxes for such carriers, the disposition of such taxes, and prescribing penalties for violation of this act.

"Sec. 1. After thirty days from the effective date of this act, no person, firm or corporation shall engage or continue in the business of transporting persons or property, by motor vehicle, for hire, upon or over the public highways of this State, over fixed routes or between fixed termini, or hold themselves out to the public as being engaged in such business, unless and until they shall have obtained from the Michigan public utilities commission *a permit* so to do, which said permit shall be issued in accordance with the public convenience and necessity and shall not be assignable: *Provided,* That this act shall not apply to carriers operating exclusively within cities or villages."

Section 2 directs the public utilities commission to prescribe such rules and regulations as shall by it be deemed appropriate under the act; and authorizes the commission to withhold a permit when the applicant appears not able to furnish "adequate, safe or convenient service to the public."

Section 4 requires that the permit shall fix the route over which the carrier is to operate.

Section 6 empowers the commission after hearing granted to suspend or revoke the permit for any violation of the act or of any lawful order or regulation of the commission.

Section 7 requires the holder of the permit to carry insurance for the protection of passengers and those entrusting property to the carrier for transportation, with power in the utilities commission to fix the amount and to approve such insurance.

Section 8 requires every carrier to pay to the State "a fee for the privilege of engaging in the business," the amount of the fee being fixed by the statute.

Section 9 fixes the penalty for violation of the act.

The State having acted, it must be assumed, and this record discloses, that it has undertaken to and does occupy the whole field relative to regulating motor vehicles as common carriers on the highways of this State, subject only to the constitutional limitation or reservation above quoted. In testing the validity of the ordinance under consideration, it must therefore be ascertained whether the city has exceeded the power reserved to it by the constitutional provision, and to what extent, if at all, the defendant city by enacting the ordinance has invaded the field of control of motor vehicle carriers already undertaken by the State. This necessitates a somewhat detailed consideration of the provision of the ordinance. Its scope and purpose are plainly indicated by its title which reads:

"An ordinance to license and regulate *interurban auto busses* in the city of Grand Rapids."

Section 1 of the ordinance provides that the words "interurban auto bus" shall mean and include any motor vehicle engaged in the transportation of passengers for hire "between points within the boundaries of said city and to or from points or places outside said city, regardless of locality." It thus appears from the title and section 1 that the scope of the ordinance is such that it clearly goes into the

field in which the State regulations are operative. It must follow that if the subsequent provisions of the ordinance are such that they are intended to be effective outside the city limits of Grand Rapids they are invalid; but if the ordinance regulations in the reasonable control of city streets, alleys, and public places are effective only within the city of Grand Rapids their validity may be sustained. Section 2 of the ordinance, after providing that application for a license must be made to the city commission, requires the applicant to show the commission that "he is a person of good moral character and fitted for said business." The section also provides that the applicant must file with the commission a schedule showing the "times of arriving and departing and shall operate only in accordance with such schedule." Provision is made that the schedule may be changed "with the consent of the city commission." Section 3 requires that each driver of an interurban bus shall obtain a license or permit from the city. Section 4 requires the applicant for a driver's permit to state "the name, age, address and experience in driving," and that the applicant shall be "of good character and fitted for said business and pay a fee of one dollar;" and the applicant must be at least 18 years of age (section 6). Section 7 of the ordinance requires that each interurban auto bus "shall be in good running condition and repair and the interior shall at all times be kept clean and sanitary;" that no interurban auto bus shall carry passengers in excess of the capacity stated in the application for the license. Violation of any of the provisions of this section, under the ordinance, constitutes cause for revoking the license after hearing before the city commission, and the decision of the city commission thereon is made final.

Each of the matters of regulation noted in the foregoing paragraph affects and in a way controls either the equipment or the method or manner of operating an interurban auto bus outside the city of Grand Rapids as well as within its limits. In other words each of these ordinance provisions invades the field of regulation already taken over by the State under the statute which expressly provides (2 Comp. Laws 1929, § 11343):

"Said commission shall, by general order, prescribe such rules and regulations as shall, by it, be deemed appropriate, under this act. Said commission may withhold such permit in whole or in part, when it appears to the commission that the applicant is not or will not be able to furnish adequate, safe or convenient service to the public, but not without just cause."

Without stating details, it is sufficient to note that this record discloses the commission acting under its statutory authority has adopted rules and regulations fully covering interurban bus operations. The State having exercised its power of regulation, it follows that each of the above noted ordinance provisions is invalid.

Section 8 of the city ordinance contains detailed provisions in accordance with which each applicant for an interurban auto bus license must carry insurance protecting passengers and those shipping goods against damage. It is requisite that the insurance be approved by the city commission. Here again is an ordinance regulation which clearly affects the operation of an interurban bus outside the city as well as inside. It not only imposes a financial burden which has to do with general operating expenses, but its right to operate as an interurban bus is conditioned upon the city commission approving the carrier's

insurance. However, section 8 of the ordinance has been amended so that, in lieu of compliance with its requirements, the applicant is permitted to "file evidence with the city clerk that he has complied with the State law, and a bond has been filed in accordance therewith." Notwithstanding this amendment, we think the ordinance provision still invades the field of supervision in which the State is operating under express statutory authority above noted; and therefore this section of the ordinance as amended cannot be sustained.

The only other provision of the ordinance requiring consideration is section 3, wherein the applicant for a license from the city to operate an interurban bus is required to pay an annual fee of $15. Plaintiffs deny the right of the city to require payment of any fee; and further assert if it has such power that the fee now required is excessive. First, we should determine whether the city may require any license fee at all incident to the operation of interurban busses; and, second, if it may, is an annual fee of $15 for each bus excessive under the facts here presented.

Beyond question a municipality has the power to exercise reasonable control of the streets, alleys, and public places within its own limits. This is its constitutional right, and in the exercise thereof it may enact ordinances for the reasonable regulation of interurban motor busses provided such regulation does not affect the business outside the municipality; and if there is actual supervision incident to such regulation, the carrier may be required to secure a license from the municipality and pay a license fee. But as applied to other than intra-city motor busses operating as common carriers, the reasonable control of the highways reserved by the Constitution to

cities, villages, and townships is obviously that which is incidental to local traffic regulations and the proper exercise of the police power within the territorial limits of the municipality. If the attempted regulation operates outside the city limits, as well as inside such limits, it is beyond the scope of a valid ordinance regulation. Within the limitation indicated, the city has the power to impose reasonable regulations and supervision, and therefore to require a license and the payment of a license fee.

In determining whether a license fee is excessive, the particular facts of each case are controlling. *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann. Cas. 1915 D, 128). For reasons which will be stated in part, we think the circumstances here are such as justify only a small license fee, practically nominal in amount. As has often been held, the amount of such fee must be gauged by the expense incurred by the municipality incident to issuing the license and supervising the business the licensee carries on thereunder, if supervision is required. A license fee may not be imposed as a tax measure in disguise. *Vernor* v. *Secretary of State, supra.* Subject to the quoted constitutional limitation, the power of the Michigan public utilities commission to regulate common carriers under Act No. 209, Pub. Acts 1923 (see, also, Acts Nos. 212 and 312, Pub. Acts 1931), is applicable to the use of the public highways within the city limits as well as without. This record discloses that, in view of State regulations, and also because of the relatively small number of interurban busses as compared with other motor vehicles, all of which require regulation and traffic control, the fraction of city regulation and control required by interurban busses is almost negligible. Here the testi-

mony is that Grand Rapids has approximately 7,500 commercial vehicles, but of these only 88 are operating as interurban busses. This is slightly in excess of one per cent. of the commercial vehicles. If all classes of motor-driven vehicles are included, there are more than 56,000 registered within the city of Grand Rapids. Of this total the interurban busses constitute about 16/100 of one per cent. Therefore, it is not at all probable that because of the interurban bus traffic the city will require more traffic officers, policemen, or traffic lights; or that the upkeep of its streets will cost an appreciable amount more than would be required in the absence of such traffic. While slight supervision to ascertain whether the busses follow the designated city routes and whether suitable station facilities are maintained may be required, obviously the essential supervision is quite inconsequential. Evidently the regulation of interurban bus traffic is only such as is incident to that required for the effectual control of vehicular traffic in general. A license fee gauged by the limited scope of municipal regulation, as well as by the limited proportion of this type of motor traffic in the city, must be small.

In this connection, it must be borne in mind that each of these interurban bus routes passes through numerous villages and townships, and enters or passes through one or more cities other than Grand Rapids. Each of these municipalities has the same constitutional right as Grand Rapids "to the reasonable control of their streets, alleys and public places." Anything like unrestricted license fees imposed by each of such municipalities would render the operation of interurban busses impossible. It should also be noted as a matter of common knowledge that almost invariably interurban bus traffic

follows State trunk line routes, unless otherwise directed by those having authority to determine routes. A large part of the expense of constructing and maintaining these trunk lines within city limits is borne by the State. Such proportion is much greater than the proportion of the interurban bus traffic on city streets.

It is self-evident that if there is little or no need for supervision or regulation in addition to that effected by the State, and if the city streets are not subjected to an additional burden by interurban bus traffic, the justification for requiring a license at all is meager, to say the least. But under the quoted constitutional provision the city of Grand Rapids has the right of reasonable control of its streets, alleys, and public places. Among matters of proper and reasonable regulation within its own confines are that of prohibiting interurban busses from doing an intra-city business, determining their routes over city streets (see *Highway Motor Bus Co.* v. *City of Lansing,* 238 Mich. 146; *Red Star Motor Drivers' Ass'n* v. *City of Detroit,* 244 Mich. 480), regulating the rate of speed, requiring observation of traffic signals and parking regulations, designating the place or places of receiving and discharging passengers, requiring reasonable station conveniences, etc. Notwithstanding this power of purely local regulation, because of its unusually limited scope in view of State regulation, we conclude that an annual fee of $15 for each interurban bus is excessive, and that any license fee imposed by the city must be practically nominal in amount.

Touching the constitutionality of Act No. 209, Pub. Acts 1923 (2 Comp. Laws 1929, § 11342 *et seq.*), we think it is so framed as not to infringe upon the constitutional rights of municipalities to locally exercise

"reasonable control." Section 1 of the statute expressly provides:

"That this act shall not apply to carriers operating exclusively within cities or villages."

And section 8 of the act contains the following:

"Nothing in this section shall be construed to interfere with the right of any city, or village to the reasonable control, by general regulation, applicable to all motor vehicles, of its streets, alleys and public places, or to authorize a carrier to do a *local business* without the consent of the municipality in which such local business is wholly carried on."

Thus construed, full force and effect is given to the quoted portion of the Constitution, and no conflict arises between Act No. 209 (Pub. Acts 1923) and Act No. 126, Pub. Acts 1929 (1 Comp. Laws 1929, § 2238), granting cities power to provide in their charters:

"For the use, regulation, improvement and control of the surface of its streets, alleys, and public ways and of the space above and beneath them."

Because the city has the constitutional right of reasonable control, as bearing upon the determination of routes to be followed within the city, stations, station accommodations, etc., the municipality may require the carrier to set forth in his application for a license specified pertinent facts as to the kind of vehicle the carrier will use, the maker's name, serial number, or other facts which will identify the vehicle, its weight, seating capacity, etc.

The carefully prepared and helpful briefs filed in behalf of the respective parties present other questions of interest. However, conciseness of decision forbids detailed review of all the contentions urged

and of all arguments and supporting reasons advanced. All have been carefully considered, and the conclusion reached as stated. To the extent and in the particulars hereinbefore announced, the ordinance in suit is invalid and unenforceable, and to that extent the plaintiffs are entitled to the injunctive relief prayed. The decree entered in the superior court of Grand Rapids is reversed, and a decree will be entered in this court in accordance herewith. Appellants will have costs of both courts.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.