DETROIT, WYANDOTTE & TRENTON TRANSIT CO. *v.* CITY
OF DETROIT.

1. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—MOTOR VEHI-
CLES—REGULATION—HIGHWAYS AND STREETS.

State having ''occupied field'' of regulating operation of inter-
urban motor vehicles by enactment of Acts Nos. 212, 312,
Pub. Acts 1931, authority of city over said carriers is with-
drawn except such as is strictly referable to reasonable control
over its streets or as is reserved to it by law (Const., art. 8,
§ 28).

2. SAME—ORDINANCES—CITY MAY NOT PROHIBIT OPERATION OF IN-
TERURBAN JITNEYS.

Under city's constitutional right to reasonable control of its
streets, it may regulate method of operation on city streets
of interurban jitneys not doing local business, but it may not
by ordinance prohibit their operation thereon, since it would
thereby invade jurisdiction of State.

3. SAME—FAILURE TO HAVE STATE PERMIT AS AFFECTING VALIDITY
OF ORDINANCE.

That owners of interurban motor jitneys have no permit from
State does not validate city ordinance prohibiting their opera-
tion on city streets, since penalty for illegal operation is part
of control and jurisdiction taken by State (Acts Nos. 212,
312, Pub. Acts 1931), and court may not assume that law
will be violated.

Appeal from Wayne; Gillespie (Glenn C.), J.,
presiding. Submitted October 13, 1931. ·(Docket
No. 96, Calendar No. 35,488.) Decided October 3,
1932.

Bill by Detroit, Wyandotte & Trenton Transit
Company, a Michigan corporation, and others
against the City of Detroit, a municipal corporation,
to enjoin enforcement of ordinance prohibiting
operation of interurban jitneys on Detroit streets.
Bill dismissed. Plaintiffs appeal. Reversed.

*Edward N. Barnard,* for plaintiffs.

As to regulation of jitney busses, see annotation in L. R. A.
1915F, 840; L. R. A. 1916B, 1156; L. R. A. 1918B, 912; L. R. A.
1918F, 475.

*Clarence E. Wilcox* and *Clarence E. Page,* for defendant.

FEAD, J.   Plaintiffs appeal from a decree declaring valid the following ordinance of the city of Detroit and dismissing bill of complaint filed to restrain its enforcement against them:

"SECTION 1.   No person, firm, copartnership or corporation shall operate or cause to be operated upon any street, avenue, boulevard or other public place within the limits of the city of Detroit any jitney, so-called, whether said jitney operates wholly within the city limits of Detroit or from some point within the city limits of Detroit to some point outside of Detroit, or, from some point outside of Detroit to some point within the city limits of Detroit, or otherwise.

"SEC. 2.   For the purpose of this ordinance a jitney shall be defined to mean any motor-propelled vehicle designed to carry not to exceed seven persons (other than a taxicab or public vehicle which is hired by the hour) which is operated on the streets, avenues, boulevards or other public places of the city of Detroit, as a public carrier affording service similar to that of a city, suburban or interurban street railway, for the service of which fares are charged or collected or received."

For seven years prior to the adoption of the ordinance, plaintiffs operated about 100 jitneys, on a three-minute service, in transporting passengers for hire between points in Detroit and certain neighboring cities.   They had a terminus in the downtown district of Detroit but did no local business in the city.   They took on and discharged passengers at any desired street crossing.   Their route was on Fort street, a busy thoroughfare, also substantially served by motor busses and by street railway, which extended to some of the cities served by plaintiffs.

The case was heard before the enactment of Acts Nos. 212 and 312, Pub. Acts 1931. As it involves an important public question, this court requested briefs upon the effect of State statutes in order that the present validity of the ordinance and the propriety of an injunction might be determined. This raised issues not presented to, or passed upon by, the circuit judge.

The city claims power to adopt the ordinance under the Constitution, article 8, § 28:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

It is conceded that plaintiffs operated public utilities. But they did not need a franchise from the city because they did not use the streets for wires, poles, pipes, tracks or conduits, nor transact a local business. The first part of the section confers no authority to prohibit operation of plaintiffs' vehicles on the street.

The power to adopt the ordinance, if any, must be found in the right of the city to reasonable control of its streets.

This provision was vigorously debated in the Constitutional Convention. Until late in the deliberations the word "reasonable" did not appear in the section. The delegates feared that, as submitted,

the right would be construed to deprive the State of control of highways in municipalities. Debates, Constitutional Convention, pp. 1405, 1408. In the Address to the People, submitting the proposed Constitution for adoption, the debates and purpose of the word "reasonable" were summed up:

"The word 'reasonable' was inserted to place a limitation upon the authority cities, villages and townships may exercise over the streets, alleys, highways and public places within their corporate limits. And it was pointed out in the debates that without the word 'reasonable' or a similar qualification the section would practically deprive the State itself of authority over its highways and public places." P. 1433.

The city stresses language in *Melconian* v. *City of Grand Rapids,* 218 Mich. 397, and *Red Star Motor Drivers' Ass'n* v. *City of Detroit,* 234 Mich. 398, to the effect that a city may prohibit the use of its streets for gain. The language must be read in connection with the fact that the cases involved carriers doing a local business and concerned regulatory, not prohibitory, ordinances. The question of the effect of State statutes upon local powers did not arise. It was presented later in *Red Star Motor Drivers' Ass'n* v. *City of Detroit,* 244 Mich. 480, where it was held, on the authority of *Red Star Motor Drivers' Ass'n* v. *Michigan Public Utilities Commission,* 235 Mich. 85 (P. U. R. 1926 E, 411), that the statute regulating motor vehicles was not applicable to the situation. The cases, therefore, do not apply where the State has assumed control over carriers.

By Acts Nos. 212 and 312, Pub. Acts 1931, the State has taken jurisdiction of all carriers of persons or property for hire over the highways and has put them under supervision of the Michigan public

utilities commission. The broad definitions in section 1 and the exceptions enumerated in section 18 of Act No. 212 and section 13 of Act No. 312 leave no doubt that plaintiffs are subject to the acts. The issue calls for application of the doctrine of ''occupation of a field'' of legislation by the superior power. See *Chicago & N. W. R. Co.* v. *Michigan Public Utilities Commission,* 233 Mich. 676; *Napier* v. *Railroad Co.,* 272 U. S. 605 (47 Sup. Ct. 207).

The legislative authority cannot infringe upon the constitutional right of the city to reasonable control of its streets. *Highway Motorbus Co.* v. *City of Lansing,* 238 Mich. 146; *North Star Line, Inc.,* v. *City of Grand Rapids,* 259 Mich. 654. Nor do Acts Nos. 212 and 312 purport to do so. On the contrary, section 17 of Act No. 212 and section 12 of Act No. 312, expressly preserve such local control. But the enactment of the statutes had the effect of withdrawing from the city all authority over carriers covered by them, except such power as is strictly referable to reasonable control of the streets or as is reserved to it by law. In the *North Star Case,* Mr. Justice North said:

''The State having acted, it must be assumed, and this record discloses, that it has undertaken to and does occupy the whole field relative to regulating motor vehicles as common carriers on the highways of the State, subject only to the constitutional limitation or reservation above quoted. In testing the validity of the ordinance under consideration it must therefore be ascertained whether the city has exceeded the power reserved to it by the constitutional provision and to what extent, if at all, the defendant city by enacting the ordinance has invaded the field of control of motor vehicle carriers already undertaken by the State.''

It is apparent that an ordinance prohibiting the operation of specified kinds of motor vehicles on city streets, the carriers not doing a local business, *prima facie* is an invasion of the State's jurisdiction over them and is invalid.

It is attempted, however, to justify the prohibition as reasonable control upon the ground that jitneys have no fixed terminals, but stop at any corner to receive and discharge passengers, dart in and out of the traffic, have their routes over busy thoroughfares already served by street cars and busses, and through numbers and methods of operation cause congestion and constitute a menace to traffic.

Methods of operation undoubtedly may become the subject of reasonable regulation by the city. But the number and kind of carriers for hire permitted to engage in nonlocal business are matters upon which the State has taken jurisdiction and are beyond city veto. Nor does the ordinance purport to make numbers or method of operation a test of prohibition. It bars all jitneys, although only one be operated, in an exceptional manner and under State permit. As framed, it bears no relation to the constitutional right of reasonable control of streets, invades the jurisdiction of the State, and is invalid as against carriers doing no local business.

The fact that plaintiffs have not a permit from the State to operate does not validate the ordinance. The penalty for illegal operation is part of the control and jurisdiction taken by the State. We can not assume that plaintiffs will violate the law.

Decree will be reversed, and injunction issued, if necessary, but without costs.

Clark, C. J., and McDonald, Potter, Sharpe, North, Wiest, and Butzel, JJ., concurred.