LINCOLN PARK COACH CO. *v.* CITY OF DETROIT.

1. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — INTERCITY MOTOR BUS CARRIERS—USE OF STREETS—DESIGNATION OF ROUTES.
   A city could not exclude an intercity motor bus passenger carrier, operating under permit by State public utilities commission, from the use of its streets by nondesignation of route or indirectly by an arbitrary designation so unreasonable as to preclude proper use nor could such carrier select streets for user, and regardless of municipal action, seek judicial authorization, as a city has a right to exercise reasonable control over traffic user of its streets to avoid dangerous congestion.

2. SAME—MUNICIPAL CORPORATIONS—COURTS—USE OF STREETS BY INTERCITY MOTOR BUS CARRIERS.
   If the municipal designation of a route to be followed by an intercity carrier of passengers by motor bus which had been licensed by the State public utilities commission is so arbitrary or unreasonable as to deprive it of the right to a suitable way, the court may void such action but cannot assume power to designate another way.

3. MUNICIPAL CORPORATIONS—INTERCITY MOTOR BUS CARRIERS—USE OF STREETS.
   In suit by intercity carrier of passengers by motor bus which had been issued a permit so to operate by the State public utilities commission to restrain city from interference with the carrier's continued use of unauthorized streets, evidence *held,* insufficient to void the municipal designation of streets to be used by plaintiff.

4. SAME—ADMINISTRATIVE RESOLUTIONS.
   The resolution of a city council, designating route to be followed by an intercity motor bus passenger carrier and stating reasons for such regulation, being special and administrative, is valid.

5. SAME—REGULATION OF TRAFFIC—SPECIAL DESIGNATION FOR INTERCITY MOTOR BUS OPERATOR BY RESOLUTION.
   The general regulation of city-wide traffic may require enactment of an ordinance, but special designation of streets, at

the request of an intended user for carriage of passengers by motor bus, if fixed by resolution of the city council and approved by the mayor, constitutes binding action upon the parties concerned.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted June 4, 1940. (Docket No. 4, Calendar No. 41,180.) Decided October 7, 1940. Rehearing denied November 13, 1940.

Bills by Lincoln Park Coach Company, a Michigan corporation, against the city of Detroit, a municipal corporation, and others to restrain the city from interfering with plaintiff in the operation of a bus route on certain city streets. Bills dismissed. Plaintiff appeals. Affirmed.

*Albert J. Silber* (*Cook, Smith, Jacobs & Beake,* of counsel), for plaintiff.

*Paul E. Krause,* Corporation Counsel, *Julian P. Rodgers,* Assistant Corporation Counsel, *Rodney Baxter,* and *Leon H. Harman,* for defendants.

Wiest, J. Under permit of the State public utilities commission, plaintiff company operates a motor bus passenger service between Lincoln Park and the city of Detroit over a route in the city of Detroit of its own selection and contrary to a route designated by resolution of the Detroit city council and approved by the mayor. Threatened by Detroit city officials with interference with continued use of such unauthorized streets, plaintiff filed bills in the Wayne circuit to restrain such interference, claiming that the resolution designating streets for its use is void because not by ordinance and is arbitrary, unreasonable, and over streets unsuitable by reason

of narrowness and other traffic thereon.   Upon hearing the bills were dismissed, and plaintiff reviews by appeal.

The route employed by plaintiff within the city since August 1, 1937, without municipal authorization, is as follows:

"Commencing at the city limits on Fort street and continuing down Fort street to Cass avenue; thence to Bagley avenue to the inclosed bus terminal on Washington boulevard, and returning to Wayne street; thence to Fort street; thence west to the city limits."

This, with other routes petitioned for by plaintiff, but all of which included Fort street, was denied by the city council.

The route fixed by resolution of the council on July 11, 1939, was:

"East on Fort to north on Woodmere, to east on Vernor, to east on Michigan, to north on Bagley, to east on Clifford, to south on Times Square inbound and that the route from south on Washington boulevard to west on Michigan, to west on Vernor, to south on Woodmere, to west on Fort."

The resolution stated reasons for such regulation.

The city could not exclude plaintiff from use of streets by nondesignation or indirectly by arbitrary designation so unreasonable as to preclude proper use.   On the other hand plaintiff could not select streets for user and, regardless of municipal action, seek judicial authorization.   The right of a city to exercise reasonable control over traffic user of its streets to avoid dangerous congestion cannot be questioned.   *Melconian* v. *City of Grand Rapids,* 218 Mich. 397; *Red Star Motor Drivers' Ass'n* v. *City of Detroit,* 234 Mich. 398; *Highway Motorbus Co.* v.

*City of Lansing,* 238 Mich. 146; *North Star Line, Inc.,* v. *City of Grand Rapids,* 259 Mich. 654; *Detroit, Wyandotte & Trenton Transit Co.* v. *City of Detroit,* 260 Mich. 124.

If the municipal designation is so arbitrary or unreasonable as to deprive right of a suitable way the court may void such action but cannot assume power to designate another way.

The evidence in the cases at bar falls short of requiring decrees voiding the municipal designation of streets to be used by plaintiff. The resolution of the city council, being special and administrative, is valid. See *City of Detroit* v. *Railway,* 215 Mich. 401. General regulation of city-wide traffic may require enactment of an ordinance, but special designation of streets, at the request of the intended user, if fixed by resolution of the city council and approved by the mayor, constitutes binding action upon the parties concerned.

The decrees are affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.